# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE JARROW** | **CIVIL ACTION** |
| **versus** | **NO. 12-473** |
| **N. BURL CAIN** | **SECTION: "S" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Eugene Jarrow, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On October 26, 1998, he was convicted of attempted second degree murder under Louisiana law.[1] On October 23, 2001, he was sentenced to a term of fifty years imprisonment without benefit of probation, parole, or suspension of sentence.[2] On November 14, 2001, he was found to be a third offender and was resentenced as such to a term of life imprisonment

---

[1] State Rec., Vol. III of X, minute entry dated October 26, 1998.

[2] State Rec., Vol. III of X, minute entry dated October 23, 2001.

without benefit of probation, parole, or suspension of sentence.[3] On April 23, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4] His related writ application was then denied by the Louisiana Supreme Court on December 19, 2003.[5]

On September 9, 2004, petitioner filed an application for post-conviction relief with the state district court.[6] The district court denied that application on December 13, 2004,[7] and the Louisiana Fourth Circuit Court of Appeal denied his related writ application on February 3, 2005.[8] He did not seek review of that ruling by the Louisiana Supreme Court.[9]

On January 4, 2007, petitioner filed with the state district court a "Motion to Vacate an Illegal Sentence and to Set Aside an Illegal Judgment."[10] That motion was denied on January 11,

---

[3] State Rec., Vol. IX of X, transcript of November 14, 2001; State Rec., Vol. IV of X, minute entry dated November 14, 2001.

[4] State v. Jarrow, No. 2002-KA-1160 (La. App. 4th Cir. Apr. 23, 2003); State Rec., Vol. VI of X.

[5] State v. Jarrow, 861 So.2d 555 (La. 2003) (No. 2003-KO-1683); State Rec., Vol. VII of X.

[6] State Rec., Vol. V of X.

[7] State Rec., Vol. VIII of X, Judgment dated December 13, 2004; State Rec., Vol. V of X, minute entry dated December 13, 2004.

[8] State v. Jarrow, No. 2005-K-0012 (La. App. 4th Cir. Feb. 3, 2005); State Rec., Vol. VIII of X.

[9] See Rec. Doc. 3, p. 20.

[10] State Rec., Vol. IX of X.

2010.[11] His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on March 4, 2010,[12] and by the Louisiana Supreme Court on April 1, 2011.[13]

In the interim, on January 12, 2010, petitioner had filed another application for post-conviction relief with the state district court.[14] On January 20, 2010, the district court held that the application would not be considered because it was untimely filed.[15] Apparently unaware of that ruling, petitioner filed an application for a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal on or about January 24, 2011.[16] Rather than treating that application solely as one for a writ of mandamus, the Court of Appeal reviewed petitioner's underlying post-conviction claims and, on February 2, 2011, held that he had failed to demonstrate that he was entitled to relief.[17] His related writ application was then denied by the Louisiana Supreme Court on January 20, 2012.[18]

On or after February 7, 2012, petitioner filed the instant federal application for *habeas corpus* relief asserting a single claim, i.e. that the state withheld material evidence in

---

[11] State Rec., Vol. IX of X, Judgment dated January 11, 2010.

[12] State v. Jarrow, No. 2010-K-0182 (La. App. 4th Cir. Mar. 4, 2010); State Rec., Vol. IX of X.

[13] State *ex rel.* Jarrow v. State, 60 So.3d 1246 (La. 2011) (No. 2010-KH-0745); State Rec., Vol. IX of X. On May 6, 2011, the Louisiana Supreme Court also denied petitioner's request for reconsideration. State *ex rel.* Jarrow v. State, 62 So.3d 119 (La. 2011) (No. 2010-KH-0745).

[14] State Rec., Vol. X of X.

[15] State Rec., Vol. V of X, Judgment dated January 20, 2010.

[16] State Rec., Vol. X of X.

[17] State v. Jarrow, No. 2011-K-0124 (La. App. 4th Cir. Feb. 2, 2011); State Rec., Vol. X of X.

[18] State *ex rel.* Jarrow v. State, 78 So.3d 135 (La. 2012) (No. 2011-KH-0398); State Rec., Vol. X of X.

violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.[19] The state contends that the federal application is untimely.[20] The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications. The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Clearly, Subsections B and C are inapplicable in the instant case, in that petitioner does not claim either the existence of a state-created impediment to filing or a newly-discovered

---

[19] Rec. Doc. 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his application on February 7, 2012; therefore, it was obviously given to prison officials for mailing on or after that date.
   Petitioner originally asserted three claims in his federal application; however, his second and third claims were later deleted at his request. Rec. Docs. 15 and 18.

[20] Rec. Doc. 16.

constitutional right. Moreover, for the following reasons, it is clear that his federal application is untimely under both Subsections A and D.

### 28 U.S.C. § 2244(d)(1)(A)

As noted, under Subsection A, a petitioner must bring his federal *habeas corpus* claims within one (1) year of the date on which his underlying criminal judgment became "final." On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on December 19, 2003. As a result, for AEDPA purposes, his state criminal judgment became final, and his federal limitations period therefore commenced, on March 18, 2004. See id. at 317-18. That federal limitations period then expired one year later, unless the deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After one hundred seventy-four (174) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on September 9, 2004. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). In the instant case, the state concedes that petitioner's related writ application was timely filed with the Louisiana Fourth Circuit Court of Appeal.[21] Therefore, tolling continued until March 7, 2005, when petitioner's time expired for seeking review of the Court of Appeal's decision. Id. (a state application ceases to be pending, and tolling therefore ends, when the time for appellate review expires).[22]

Once the limitations period then resumed running, an additional one hundred seventy-seven (177) days elapsed untolled until the limitations period was arguably suspended on September 1, 2005, by former Chief Judge Helen G. Berrigan's suspension of all prescriptive periods in this Court from September 1, 2005, through November 25, 2005, as a result of Hurricane Katrina. See, e.g., Mark v. Michael, Civ. Action No. 08-1261, 2008 WL 4365929, at *2 (E.D. La. Sept. 23, 2008). Out of an abundance of caution, the Court will not count those days against petitioner.

When the limitations period then resumed running on November 26, 2005, petitioner had only fourteen (14) days of the federal limitations period remaining. Therefore, he had only until December 9, 2005, to either again toll the limitations period or file his federal application.

---

[21] Rec. Doc. 16, p. 9.

[22] The Court of Appeal denied relief on February 3, 2005. Under Louisiana law, petitioner then had thirty days to file a writ application with the Louisiana Supreme Court. Louisiana Supreme Court Rule X, § 5(a). However, because the thirtieth day in this instance fell on a Saturday, the deadline was extended through Monday, March 7, 2005. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

Petitioner had no other applications for state post-conviction relief or other collateral review pending at any time on or before December 9, 2005. Therefore, he clearly is not entitled to further statutory tolling.[23]

The Court next considers equitable tolling. The United States Supreme Court has held that AEDPA's limitations period is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

In that petitioner is entitled to neither further statutory tolling nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before December 9, 2005, in

---

[23] The Court notes that petitioner subsequently filed a state post-conviction motion and application. However, because that motion and application were filed *after* the expiration of the federal statute of limitations, they had no bearing on the timeliness of his federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." Butler, 533 F.3d at 318.

order to be timely under 28 U.S.C. § 2244(d)(1)(A). Because his federal application was not filed until on or after February 7, 2012, it is untimely under that subsection.

28 U.S.C. § 2244(d)(1)(D)

Petitioner appears to argue that Subsection A is inapplicable because he is asserting a claim that the District Attorney withheld material evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. The Court will broadly construe that contention as an argument that Subsection D applies. As noted, Subsection D delays the commencement of the AEDPA's statute of limitations until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

In support of his contention, petitioner states that in 2008 he learned that inmates at the prison maintained a "bad apple" file which collected information on state witnesses who had acted unethically or illegally in the past. That file apparently contained information indicating that Officer Byron Winbush, who testified at petitioner's trial, was such a "bad apple." Based on that information, on March 31, 2009, petitioner obtained from the Louisiana Fourth Circuit Court of Appeal a copy of its decision in Case No. 95-CA-1668. That decision, which involved a Civil Service matter unconnected to the instant case, revealed that Winbush had been suspended for five days for untruthfulness and verbal intimidation in connection a 1992 traffic accident and arrest. In its decision, the Court of Appeal upheld that suspension. Berger v. New Orleans Police Department, 666 So.2d 709 (La. App. 4th Cir. 1995).[24]

---

[24] Petitioner repeatedly refers to Winbush's "conviction." There is no evidence that Winbush was convicted of anything; rather, petitioner's evidence shows only that Winbush was suspended from his job in an administrative proceeding.

– 8 –

Even if Subsection D is applicable, which it is doubtful,[25] petitioner's federal application is still untimely. Subsection D runs not from the date on which the factual predicate for a petitioner's claim was in fact discovered, but rather from "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). As noted, the information on which petitioner's claim is based was contained in a published opinion from 1995 and, therefore, could have been obtained with due diligence even prior to his trial. See Brayboy v. Napel, Civ. Action No. 2:11-CV-11021, 2012 WL 37395, at *6 (E.D. Mich. Jan. 9, 2012) (newspapers articles evidencing police misconduct

---

[25] Although Subsection D can be triggered by the belated discovery of a factual predicate for a Brady claim, that occurs only if the information discovered actually constituted Brady material. See Whalen v. Randle, 37 Fed. App'x 113, 119 (6th Cir. 2002); Brayboy v. Napel, Civ. Action No. 2:11-CV-11021, 2012 WL 37395, at *6 (E.D. Mich. Jan. 9, 2012). To qualify as Brady material, the evidence in question must have been suppressed, favorable to the accused, and material to either guilt or punishment. See Drew v. Collins, 964 F.2d 411, 419 (5th Cir. 1992). "Under the Brady rule, the government must give the defense impeachment evidence and exculpatory evidence." United States v. Valencia, 600 F.3d 389, 418 (5th Cir. 2010). However, Brady does not obligate the state to furnish a defendant with evidence that is fully available to the defendant through the exercise of reasonable diligence. "When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation." Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002). Just as petitioner learned of Winbush's suspension through the Louisiana Fourth Circuit Court of Appeal's decision, that published opinion was easily discoverable and available to any member of the public, including both petitioner and his lawyer, years before petitioner's trial even took place. Therefore, even on the off-chance that the prosecution was aware of Winbush's administrative suspension, which has in no way been established, and even if evidence of an administrative suspension could be used to impeach Winbush, the prosecution was not constitutionally required to provide that information to the defense. Cf. Feldman v. United States, Nos. 93 CIV 6668 and 89 CR 765, 1993 WL 497868, at *2 (S.D.N.Y. Dec. 2, 1993) (the government was not required to disclose information contained in a published article in a journal available to the public because "the article is material of which defendant knew or should have known, and, as such, its disclosure by the government was not required under Brady."). Therefore, because petitioner's underlying Brady claim is meritless, the discovery of the factual predicate for that claim did not trigger Subsection D.
  Moreover, because petitioner's Brady claim has no merit for these reasons, and because that is the sole claim asserted in his federal *habeas corpus* application, he would not be entitled to relief in this proceeding even if his federal application had been timely filed.

were available for discovery by a petitioner when they were published); see also Sorce v. Artuz, 73 F.Supp.2d 292, 298 (E.D.N.Y. 1999). As a result, Subsection D gains petitioner no additional delay of the commencement date than already otherwise afforded under Subsection A.

Because petitioner's federal application is untimely under either § 2244(d)(1)(A) or (D), and because § 2244(d)(1)(B) and (C) are clearly inapplicable, the undersigned finds that the application should be dismissed as untimely filed.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Eugene Jarrow be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this twenty-eighth day of September, 2012.

*/s/ Daniel E. Knowles, III*
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.